**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Criminal Action No. 17-CR-196-2** |
| | ) | |
| | ) | |
| **DENNIS RAY DAVIS, JR.** | ) | |

## <u>MEMORANDUM OPINION</u>

At issue in this matter is Defendant Dennis Ray Davis, Jr.'s motion to vacate his conviction pursuant to 28 U.S.C. § 2255 (Dkt. 256). After a six-day trial in January 2018, a jury convicted Defendant of conspiracy to commit sex trafficking of a minor by force, fraud, and coercion in violation 18 U.S.C. §§ 1591(a)(1), 1594(c), and three counts of sex trafficking of a minor in violation of 18 U.S.C. § 1591(a)(1). Defendant was then sentenced to 312 months in prison. The Fourth Circuit affirmed his conviction and sentence, *see United States v. Williams*, 783 F. App'x 269 (4th Cir. 2019), and Defendant did not file a petition for a writ of certiorari. On August 4, 2022, Defendant, by counsel, filed a motion to vacate his sentence under 28 U.S.C. § 2255, arguing that he received ineffective assistance of counsel at trial and that the statutory deadline for filing his petition should be equitably tolled. The government filed a response to Defendant's § 2255 petition, challenging, among other things, the timeliness of the motion. Defendant's motion has been fully briefed and argued at a hearing on November 17, 2022. Accordingly, the matter is now ripe for disposition.

In short, Defendant's motion to vacate his conviction must be dismissed as untimely because Defendant failed to file his petition within the one-year statutory deadline and Defendant

1

has not established that equitable tolling of the one-year period is warranted. Furthermore, even

if Defendant were entitled to equitable tolling, his motion would nonetheless fail on the merits.

## I.

Defendant's § 2255 petition must be dismissed at the outset because the motion is

untimely. Although the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

permits a criminal defendant to challenge the legality of his sentence, a defendant must file a

motion to vacate a sentence under § 2255 within one year of the date a defendant's judgment of

conviction becomes final. *See* 28 U.S.C. §§ 2255(a), (f). A judgment of conviction becomes final

when one of three events occur: (1) the opportunity to appeal the district court's judgment

expires; (2) the opportunity to file a petition for a writ of certiorari from the appellate court

expires; or (3) the Supreme Court denies the inmate's petition for a writ of certiorari. *See Clay v.*

*United States*, 537 U.S. 522, 524–25, 532 (2003). Here, the Fourth Circuit affirmed Defendant's

conviction on July 17, 2019. Defendant did not petition the Supreme Court for certiorari, so his

conviction became final on October 17, 2019, when the time for filing a petition of certiorari

expired.[1] Defendant did not file his § 2255 petition until August 4, 2022, almost 22 months after

the statutory deadline expired and almost three years after his conviction became final.

Defendant's motion to vacate his sentence therefore must be dismissed because Defendant filed

the motion long after the expiration of the one-year limitations period.

Seeking to avoid this conclusion, Defendant argues that even though he filed his motion

late, his circumstances warrant equitable tolling. This argument must be rejected. In rare

---

[1] Pursuant to the Rules of the Supreme Court of the United States, Defendant had 90 days from the entry of judgment to file a writ of certiorari. *See* U.S. Sup. Ct. Rule 13.1, 13.3. The 90-day period for filing a writ of certiorari therefore expired on October 17, 2019, rendering Defendant's judgment final at that point. *See Clay v. United States*, 537 U.S. at 524–25 (explaining that a judgment becomes final once the opportunity to file a petition for a writ of certiorari from the appellate court expires).

circumstances, prisoners who fail to file a § 2255 petition within the one-year statutory period may seek equitable tolling from the district court. But in doing so, a habeas petitioner bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also Holland v. Florida*, 560 U.S. 631, 650 (2010). In establishing that equitable tolling is justified, an inmate "bears a strong burden to show specific facts" which demonstrate that the defendant fulfills both elements of the test. *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (quoting *Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008)). Furthermore, the Fourth Circuit has made clear that the petitioner must show that his late filing was due to circumstances "beyond his control or external to his own conduct." *Rouse v. Lee*, 339 F.3d 238, 246–47 (4th Cir. 2003). The Fourth Circuit has also instructed that equitable tolling of AEDPA must be "guarded and infrequent," and reserved for "rare instances" where "it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). Here, as explained below, Defendant is not entitled to equitable tolling because Defendant has failed to satisfy his burden to establish either that (1) extraordinary circumstances prevented him from timely filing his petition, or (2) that he diligently pursued his rights.

## A.

First, Defendant's equitable tolling argument fails because he has not shown that "some extraordinary circumstance" outside of his control prevented Defendant from filing his petition on time. *Pace*, 544 U.S. at 418. Defendant argues that he faced extraordinary circumstances justifying equitable tolling because: (1) Defendant asked his lawyer to file a habeas petition, but his lawyer did not do so; (2) Defendant sought other counsel to prepare a petition but was unable

to find one until June 2022; and (3) the COVID-19 pandemic exacerbated his difficulty in filing his petition because Defendant was in isolation for much of his incarceration and could not receive mail.

Defendant's arguments must be rejected because he has failed to identify facts amounting to "extraordinary circumstances" sufficient to establish that Defendant is entitled to the "infrequent" and "rare" remedy of equitable tolling. *Rouse*, 339 F.3d at 246. Defendant first argues that equitable tolling is justified because his previous lawyer failed to file a § 2255 petition on Defendant's behalf. In support of this argument, Defendant states in his petition only that he "reached out to his [former] lawyer to file a habeas corpus petition for him, but his [former] lawyer did not do so." Def.'s Mot. to Vacate, Dkt. 256 at 11. This argument alone is insufficient to support equitable tolling, for in this respect, the Fourth Circuit has made clear that principles of equitable tolling do not extend to "garden variety claims of excusable neglect" or "mistake[s] of counsel," including counsel's "erroneous interpretation of the statute of limitations provision." *Rouse*, 339 F.3d at 247–48. Thus, pursuant to binding Fourth Circuit precedent, any inadvertent failure on the part of Defendant's counsel to file Defendant's § 2255 petition cannot justify equitable tolling here. And although federal Courts of Appeals have held that equitable tolling is appropriate for egregious attorney neglect such as where counsel effectively abandons a client,[2] here, Defendant has not alleged any facts in his petition indicating that his former lawyer abandoned him. Indeed, at oral argument, counsel for Defendant was asked whether Defendant had provided affidavits with any additional facts to support

---

[2] *See Nara v. Frank*, 264 F.3d 310, 320 (3d Cir. 2001) (equitable tolling granted where counsel "effectively abandoned" the defendant); *Baldayaque v. United States*, 338 F.3d 145, 152–53 (2d Cir. 2003) (equitable tolling granted where counsel did "no legal research on the case" and "never spoke to or met his client"); *United States v. Martin*, 408 F.3d 1089, 1094 (8th Cir. 2005) (equitable tolling granted where counsel ignored client's calls and asserted that there was "no such thing as a one-year filing deadline"); *Spitsyn v. Moore*, 345 F.3d 796, 800–02 (9th Cir. 2003) (equitable tolling granted where attorney retained a client's file for two months beyond the filing deadline making it difficult for the defendant to file a *pro se* § 2255 motion).

Defendant's claim that his former counsel failed to file a habeas petition on Defendant's behalf. In response, counsel for Defendant stated that there were no affidavits in support of Defendant's arguments and that all the facts supporting equitable tolling argument were contained in paragraph 18 of Defendant's § 2255 petition. The *only* reference in Defendant's petition to his former attorney is the statement that Defendant "reached out to his [former] lawyer to file a habeas corpus petition for him, but his [former] lawyer did not do so." Def.'s Mot. to Vacate, Dkt. 256 at 11. Thus, Defendant has failed to satisfy his "strong burden to show specific facts" demonstrating that extraordinary circumstances exist due to neglect by his counsel. *Yang*, 525 F.3d at 928.

Next, Defendant argues that he is entitled to equitable tolling because he had difficulty finding counsel to help him prepare his habeas petition. According to Defendant, he "tried to seek other counsel to prepare and present the habeas petition for him but this was hampered by the unwillingness of any attorneys to assist." Def.'s Mot. to Vacate, Dkt. 256 at 11. This argument fails; Defendant's difficulty finding an attorney to assist with his § 2255 motion is not an extraordinary circumstance sufficient to justify equitable tolling. Although the Fourth Circuit has not explicitly addressed this point, multiple federal Courts of Appeal have explained that "neither a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling." *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999).[3] Additionally, the Fourth Circuit has explained that Defendants have "no constitutional

---

[3] *See also Jenkins v. Greene*, 630 F.3d 298, 305 (2d Cir. 2010) ("[T]he doctrine of equitable tolling does not . . . allow tolling whenever a petitioner must face the daunting procedural obstacles to obtaining habeas review without the assistance of counsel."); *U.S. v. Cicero*, 214 F.3d 199, 203 (D.C. Cir. 2000) ("The prisoner's ignorance of the law or unfamiliarity with the legal process will not excuse his untimely filing, nor will a lack of representation during the applicable filing period."); *Murrell v. Crow*, 793 F. App'x 675, 679 (10th Cir. 2019) (denying inmate's request for equitable tolling where "the only allegedly extraordinary circumstance he identifies is his lack of access to legal assistance . . . or an attorney").

right to counsel in . . . federal habeas proceedings." *Rouse*, 339 F.3d at 250 (holding that petitioner failed to show extraordinary circumstances where counsel misinterpreted the statutory requirements for filing a habeas petition). Moreover, the Fourth Circuit has also explained that "even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (citations omitted). Thus, because Defendant had no constitutional right to counsel and could have filed his petition *pro se*, Defendant's difficulty in finding a lawyer is not an extraordinary circumstance that justifies equitable tolling.

Defendant also argues that the COVID-19 pandemic is an extraordinary circumstance that justifies equitable tolling in this case. According to Defendant, he was "in isolation for much of his incarceration," while he was in isolation he could not receive mail, and his isolation was "exacerbated by the COVID-19 shutdowns." Def.'s Mot. to Vacate, Dkt. 256 at 11. This argument also fails. Although the Fourth Circuit has not squarely addressed whether prison lockdowns constitute extraordinary circumstances for equitable tolling, other federal Courts of Appeal have held that "lockdowns and periods in which a prisoner is separated from his legal papers are not 'extraordinary circumstances' in which equitable tolling is appropriate." *Dodd v. United States*, 365 F.3d 1273, 1282–83 (11th Cir. 2004); *see also Jones v. Taylor*, 484 F. App'x 241, 243 (10th Cir. 2012) (holding that limited access to legal materials for six months due to a facility lockdown did not support equitable tolling); *Eulloqi v. Pliler*, 84 F. App'x 807, 808 (9th Cir. 2003) (holding that petitioner was not entitled to equitable tolling because he failed to

demonstrate that prison lockdowns amounted to extraordinary circumstances).[4] Additionally, courts have repeatedly rejected habeas petitioners' arguments that lockdowns associated with the COVID-19 pandemic justify equitable tolling.[5] Thus, the weight of authority makes clear that the fact that Defendant experienced isolation due to the COVID-19 pandemic alone, without any specific facts demonstrating how his isolation prevented him from filing a timely petition, does not constitute extraordinary circumstances for purposes of tolling the § 2255 deadline.

Moreover, Defendant has not explained anywhere in his petition what specific COVID-19 conditions he was subject to, how long they lasted, or how they prevented him from filing a *pro se* § 2255 motion within the one-year deadline. Nor has Defendant provided any information regarding why prison conditions related to COVID-19 prevented him from filing a § 2255 motion until August 2022, over *two years* after the start of the pandemic. And given that the pandemic did not begin until March 2020, Defendant had at least four months before any COVID-19 lockdowns were instituted to work on his petition after his conviction became final in

---

[4] District courts have also routinely denied requests to grant equitable tolling for untimely habeas petitions claimed to be caused by prison lockdowns and limited access to prison facilities. *See, e.g.*, *Allen v. Johnson*, 602 F. Supp. 2d 724, 727–28 (E.D. Va. 2009) (explaining that "transfers between prison facilities, solitary confinement, lockdowns, restricted access to the law library and an inability to secure court documents do not qualify as extraordinary circumstances" because they are "routine incidents and circumstances of prison life"); *U.S. v. Crawley*, 2012 WL 32402, at *4 (E.D. Va. Jan. 5, 2012) (holding that habeas petitioner was not entitled to equitable tolling due to lockdowns and transfers because he failed to "state specific facts . . . demonstrating why these circumstances prevented him from filing a timely petition"); *Cadet v. U.S.*, 2012 WL 4854381, at *4 (E.D. Va. Oct. 11, 2012) (explaining that limited access to the law library and unavailability of printed materials were insufficient to support equitable tolling because they "consist of nothing more than the ordinary hardships of a *pro se* inmate filing for collateral relief").

[5] *See Rush v. Sec'y, Fla. Dep't of Corr.*, 2021 WL 3134763, at *1 (11th Cir. June 22, 2021) (holding that petitioner could not show extraordinary circumstances based on the pandemic because "his circumstances were not different than any other prisoner attempting to access legal resources, as they were all subject to COVID-19 protocols"); *Booker v. Clarke*, 2022 WL 464554, at *3 (E.D. Va. Feb. 15, 2022) (holding that petitioner was not entitled to equitable tolling based on claims about COVID-19 because he must "state with specificity how exactly the conditions complained of prevented him from filing his petition on time"); *Day v. White*, 2022 WL 4585522, at *5 n.9 (E.D. Va. Sept. 29, 2022) ("[T]he COVID-19 pandemic does not automatically warrant equitable tolling for any petitioner who seeks it on that basis. The petitioner must establish that . . . the COVID-19 pandemic specifically prevented him from filing his motion."); *United States v. Harris*, 2021 WL 1823109, at *4–5 (E.D. Va. May 6, 2021) (finding that generic claims about COVID-19 restrictions did not warrant equitable tolling).

October 2019. Finally, as previously noted, counsel for Defendant was asked during oral argument whether Defendant had provided affidavits with additional facts to support Defendant's equitable tolling argument, and counsel for Defendant responded that all of the facts supporting equitable tolling were contained in Defendant's habeas petition. Counsel for Defendant therefore had the opportunity to bring any additional information regarding the COVID-19 conditions that Defendant faced to the court's attention and failed to do so.[6] Thus, Defendant has failed to satisfy his burden to establish that COVID-19 conditions constituted extraordinary circumstances that support equitable tolling here.

Seeking to avoid this conclusion, Defendant argues that even if none of the conditions he has identified, taken alone, are sufficient to establish extraordinary circumstances, his situation viewed as a whole warrants equitable tolling. In support, Defendant cites *Socha v. Boughton*, 763 F.3d 674 (7th Cir. 2014), a case in which the Seventh Circuit explained that for the purposes of equitable tolling, "[t]he important thing is the full picture with which an inmate is contending." *Id.* at 685. But *Socha* is inapposite and unpersuasive here. In *Socha*, the Seventh Circuit rejected the government's attempt "to pick off each of the circumstances [defendant] identifie[d]" where the defendant established that his attorney, after terminating representation of the defendant, refused to turn over the defendant's file. *Id.* at 686. The Seventh Circuit explained that this created a "nearly insurmountable" hurdle for the defendant in filing his motion on time, because "[f]or nearly 90% of his allotted one year . . . [defendant] was without access to any of the

---

[6] Furthermore, counsel for Defendant has not requested an evidentiary hearing on equitable tolling or represented that any additional facts other than those alleged in Defendant's § 2255 petition could be adduced at such a hearing. And even if counsel for Defendant *had* requested an evidentiary hearing on the issue of equitable tolling, it is "within the sound discretion of the district court to dispose of a motion without a hearing," including a motion for equitable tolling. *CVLR Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 477 (4th Cir. 2015) (citing Fed. R. Civ. P. 78(b)). Indeed, in *Wynne*, the Fourth Circuit held that it was within the district court's discretion to deny equitable tolling of a statute of limitations without first holding an evidentiary hearing—even though one was requested by the plaintiffs—where the plaintiffs failed to plead any facts supporting that extraordinary circumstances existed and that the plaintiffs exercised diligence in pursuing their rights. *Id.* at 477–78.

documents pertaining to his legal proceedings through no fault of his own." *Id.* In sharp

distinction to the defendant in *Socha*, Defendant here has adduced *no* facts in his petition

indicating that he faced any hurdles similar to those confronted by the *Socha* defendant that

prevented Defendant from filing a *pro se* § 2255 petition during the one-year statutory period or

the ensuing 22 months thereafter. Thus, Defendant has failed to satisfy his burden of establishing

extraordinary circumstances and is not entitled to equitable tolling here.

**B.**

Even if Defendant could establish extraordinary circumstances to warrant equitable

tolling, Defendant must also establish that "he has been pursuing his rights diligently"

throughout the limitations period. *Holland*, 560 U.S. at 649.[7] Defendant has not done so here. In

support of Defendant's argument that Defendant was reasonably diligent in pursuing his rights,

Defendant only states that he asked his lawyer to file a habeas petition on his behalf, reached out

to various lawyers, and sought the help of his mother to retain counsel. Def.'s Mot. to Vacate,

Dkt. 256 at 11. Yet Defendant has not provided any indication of when he undertook these

efforts to find counsel or whether he ever attempted to file a *pro se* motion during the almost

*three-year* period since his conviction became final in October 2019. Moreover, Defendant's

argument that he was diligent in pursuing his rights focuses solely on his claim of failed efforts

to obtain counsel. Yet this claim cannot rescue his untimely petition because inmates are not

entitled to counsel for purposes of filing § 2255 petitions. *See Pennsylvania v. Finley*, 481 U.S.

551, 555 (1987); *Rouse*, 339 F.3d at 250 (explaining that there is "no constitutional right to

---

[7] For example, the Supreme Court has explained that a habeas petitioner diligently pursued his rights where he wrote his attorneys "numerous letters seeking crucial information and providing direction," "repeatedly contacted the state courts, their clerks, and the Florida State Bar Association," and prepared "his own habeas petition *pro se* and promptly filed it with the District Court" on the day he discovered that his AEDPA clock had expired. *Holland*, 560 U.S. at 653.

counsel in . . . federal habeas proceedings"). Thus, because Defendant has failed to provide details about any efforts he undertook to pursue his rights to file a § 2255 petition throughout the three years since his conviction became final, equitable tolling is plainly unwarranted. *See Pace*, 544 U.S. at 419 (holding that petitioner's lack of diligence precluded equitable tolling where "petitioner waited years, without any valid justification, to assert [his] claims").[8] Thus, it follows that Defendant's petition must be dismissed for the additional reason that Defendant has failed to establish that he diligently pursued his rights in the three years since his conviction became final.

## II.

Even if Defendant were entitled to equitable tolling and his § 2255 petition were deemed timely here, Defendant's petition would still be denied on the merits. Ordinarily, in deciding the merits of a habeas petition, AEDPA instructs that "the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). But AEDPA provides that such an evidentiary hearing is not required where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.*; *see also Raines v. United States*, 423 F.2d 526, 529 (4th Cir. 1970) ("Where the files and records conclusively show that the prisoner is entitled to no relief, summary dismissal is appropriate."); *United States v. Cobb*, 848 F.2d 186, 1988 WL 54130, at *3 (4th Cir. 1988) (unpublished) (holding that an evidentiary hearing was unnecessary where habeas petitioner's ineffective assistance of counsel argument was directly refuted by the trial transcript). Here, as explained in detail below, the trial record directly refutes all of Defendant's

---

[8] *See also Roberts v. Watson*, 697 F. Supp. 2d 646, 653 (E.D. Va. 2010) ("Unexplained delays in filing petitions do not demonstrate diligence on the part of petitioner pursuing his rights."); *United States v. Piner*, 2022 WL 1720358, at *3 (E.D. Va. May 27, 2022) (Petitioner failed to demonstrate that he exercised diligence in protecting his rights where he "fail[ed] to identify with the requisite specificity what actions, if any, he took to pursue his claim in the days after his conviction became final. [Petitioner] had ten months from when his conviction became final on June 5, 2019, until the institutional lockdown began, to research his claims and visit the law library. This ten-month period of inaction alone forecloses [Petitioner's] entitlement to equitable tolling.").

arguments in his habeas petition that he received ineffective assistance of counsel at trial. Thus, an evidentiary hearing is unnecessary, and it is clear that Defendant's habeas petition would fail on the merits even if it were not dismissed as untimely.

In his petition, Defendant argues that his sentence should be vacated because he received ineffective assistance of counsel during trial in violation of the Sixth Amendment. Defendant argues that the following nine purported failures by his lawyer constituted ineffective assistance of counsel:

1. Failing to call as a witness the younger brother of Rebecca Hamilton, a prostitute and Defendant's former girlfriend who cooperated with the government during the investigation into Defendant. Defendant argues that Rebecca Hamilton's brother would have told the jury that Hamilton was lying when she testified that Defendant "beat up" Hamilton's brother.

2. Failing to cross examine Hamilton about whether Defendant fought Hamilton's brother.

3. Failing to impeach Hamilton with extrinsic evidence of phone calls that Hamilton had with her boyfriend, in which Hamilton admitted that she would place the blame for the prostitution ring on Defendant.

4. Failing to move for a mistrial on the ground that two government witnesses, Hamilton and Chelsea Canterbury, were passing notes back and forth discussing the case.

5. Failing to present Defendant's Maryland criminal docket sheet to show that Defendant was not previously convicted of the human trafficking of a minor. Defendant argues that the government led the jury to believe that he had been formerly convicted of such an offense, but he was instead convicted only of receiving the proceeds of prostitution, which is a misdemeanor in Maryland.

6. Failing to prepare a motion to dismiss the charges against Defendant due to Special Agent Skelton allegedly lying in her affidavit about a separate adult commercial sex operation involving Kyleen Derry, a woman who posted online prostitution ads. The FBI seized cell phones related to the adult commercial sex operation and obtained search warrants on the phones, and before trial Defendant sought to suppress

evidence from the search of the phones, claiming that Agent Skelton lied in her search warrant affidavit.

7.  Failing to obtain an affidavit from Kyleen Derry which Defendant argues would have helped raise reasonable doubt on Defendant's behalf.

8.  Failing to present at trial certain evidence about government witness and minor victim "J.C.," including J.C.'s prior inconsistent statements and evidence showing that J.C. made a false report of sexual assault in Maryland.

9.  Failing to impeach government witness and minor victim "J.C.M." with evidence of a letter that J.C.M. allegedly wrote stating that she planned to fabricate allegations against Defendant.

Def.'s Mot. to Vacate, Dkt. 256 at 4–5. As detailed *infra*, each of these alleged failures itself fails to support Defendant's ineffective assistance of counsel claim.

It is well established that in order to prevail on an ineffective assistance of counsel claim under the Sixth Amendment, Defendant must show both that (1) counsel's performance was so deficient that it fell below an objective standard of reasonableness; and (2) counsel's inadequate performance caused Defendant prejudice. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The first prong of *Strickland* requires establishing that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. The second prong of *Strickland* requires that a habeas petitioner "affirmatively prove prejudice," which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693–94. Finally, the Fourth Circuit has emphasized that the "basic lesson of *Strickland*" is that "[j]udicial scrutiny of counsel's performance must be highly deferential." *U.S. v. Mason*, 774 F.3d 824, 828 (4th Cir. 2014). For that reason, reviewing courts strongly presume that counsel exercised reasonable judgment, and only in "relatively rare situations" will a § 2255 motion

establish that the petitioner received constitutionally deficient representation. *Tice v. Johnson*, 647 F.3d 87, 102 (4th Cir. 2011).

Here, Defendant clearly cannot meet the stringent test established in *Strickland* because each of the purported failures by Defendant's trial counsel alleged in the petition is directly refuted by the record. As explained below, the trial record contradicts each of Defendant's eight arguments that his counsel acted deficiently. Thus, Defendant's § 2255 petition would fail on the merits even if Defendant's petition were deemed timely.

## A.

First, Defendant argues that his former counsel should have called Rebecca Hamilton's younger brother, Ben, as a witness in order to impeach Hamilton. According to Defendant, Ben would have testified that "Hamilton was lying in stating that defendant and alleged codefendants beat up" Ben. Def.'s Mot. to Vacate, Dkt. 256 at 4. During the trial, however, no one testified that Defendant beat up Hamilton's brother Ben. Instead, Hamilton testified that Defendant and his codefendant, Ivan Williams, were going to "get somebody to fight" Ben. (J.A. 512–13). Furthermore, the three minor victims who testified at trial all stated that Ben was beaten up by a male recruited by Williams, *not* by Defendant. (*See* J.A. 803–04; 856–57; 971). Thus, because no witness testified that Defendant actually fought Ben, there was no need for Defendant's counsel to call Ben as a witness to say as much. It was therefore not "outside the wide range of professionally competent assistance" for Defendant's trial counsel to decline to call Ben as a witness in order to rebut a statement that Hamilton never even said. *Tice*, 647 F.3d at 102 (quoting *Strickland*, 466 U.S. at 690). Furthermore, because no witness testified that Defendant was the one who attacked Ben, Defendant cannot show that he was prejudiced at trial from his counsel's failure to call Ben as a witness. *See Strickland*, 466 U.S. at 691 (explaining that even if

the defendant establishes that counsel performed unreasonably, the result of the proceeding will stand "if the error had no effect on the judgment").

## B.

Defendant next argues that his former lawyer acted deficiently in failing to cross-examine Hamilton on her statement that Defendant fought Ben. This argument similarly fails; Hamilton never stated that Defendant was the one who fought Ben, thus it would have been unnecessary— indeed impossible—to cross examine Hamilton on a statement Hamilton never made. It follows that Defendant cannot show his counsel performed unreasonably by failing to cross-examine Hamilton regarding Defendant fighting Ben, nor can Defendant show that he was prejudiced in any way at trial by this purported failure of his lawyer.

## C.

Next, Defendant argues that his trial counsel "failed to impeach Rebecca Hamilton with extrinsic evidence of phone calls Hamilton had with her boyfriend (Tone)."  Def.'s Mot. to Vacate, Dkt. 256 at 4. This argument is directly refuted by the trial record, which clearly shows that counsel for Defendant *did* play excerpts of the calls between Hamilton and Tone to the jury. (*See* J.A. 1343–45). As Defendant's former counsel represented to the district court at trial, during the calls that were played to the jury, Hamilton "tells Tone, who she testified was her boyfriend, that she . . . [was] going to fake it until she makes it and claim that she was forced to do this," which shows Hamilton's "intent to give false statements to the police and potentially . . . testify at trial." (J.A. 1333). Thus, Defendant's former lawyer clearly did not act deficiently in failing to impeach Hamilton with the calls between Hamilton and Tone, because Defendant's lawyer did in fact play the calls for the jury.

14

Moreover, Defendant's trial counsel cross-examined Hamilton on the prior statements that Hamilton made to Tone. For example, Defendant's counsel asked Hamilton, "[y]ou only claimed Mr. Davis was involved in your prostitution of underage girls in order to keep the heat off of your boyfriend Tone, correct?" to which Hamilton responded, "I did say that, yes." (J.A. 611). Counsel for Defendant also cross-examined Hamilton on prior statements about lying in court to paint herself as a victim by asking Hamilton, "you told your boyfriend Tone that you would lie in court about being a victim, correct?" and "[y]ou told [Tone] you would 'fake it until you make it,' right?" (J.A. 615). Finally, counsel for Defendant also elicited testimony from Hamilton that she had a three-way call with her brother Ben and Tone, during which Hamilton "instructed [Ben] to tell the girls that they needed to tell on the real pimp," Defendant's co-conspirator Williams. (J.A. 613). Thus, it is clear from the trial record that counsel for Defendant did present evidence of Hamilton's phone calls to Tone, and Defendant's argument that his lawyer was constitutionally ineffective in this respect must therefore be rejected.

**D.**

Next, Defendant argues that he received ineffective assistance of counsel because his former lawyer failed to abide by Defendant's request to move for a mistrial on the ground that two government witnesses, Rebecca Hamilton and Chelsea Canterbury, passed notes back and forth discussing the case while the two were in jail. This argument must be rejected at the outset because the Fourth Circuit has instructed that "decisions regarding a mistrial are tactical decisions entrusted to the sound judgment of counsel, not the client." *U.S. v. Chapman*, 593 F.3d 365, 368 (4th Cir. 2010). For this reason, the decision "to refrain from asking the court for a mistrial . . . bind[s] the defendant even when the defendant expressed a contrary wish to his lawyer." *Id.* (quoting *United States v. Burke*, 257 F.3d 1321, 1324 (11th Cir. 2001)).

15

Furthermore, defense counsel's decision not to move for a mistrial on the basis of the jail notes was reasonable, as there would have been no legal basis to support any such motion. This is so because the Fourth Circuit has explained that in the event that witnesses violate a sequestration order and discuss the case among themselves, the "district court has three options for addressing [the] violation," which are (1) sanction of the witness; (2) instructions to the jury that they may consider the violation toward the issue of credibility; or (3) exclusion of the witnesses' testimony. *United States v. Smith*, 441 F.3d 254, 263 (4th Cir. 2006). Based on this binding Fourth Circuit precedent, declaring a mistrial is not a proper remedy where witnesses discuss the case outside of the courtroom. Any motion for a mistrial by defense counsel on the basis of the jail notes therefore would have been futile, and trial counsel acted reasonably in deciding not to file such a motion.[9]

In any event, counsel for Defendant extensively addressed the jail notes between Hamilton and Canterbury during trial. For example, counsel for Defendant cross-examined both Hamilton and Canterbury on the jail notes, (J.A. 573–82, 612–14), and defense counsel also moved for admission of the letters as exhibits for the jury's consideration, which the district court granted for purposes of impeachment. (J.A. 1307–15, 1872–77). Thus, trial counsel's handling of the jail notes between Hamilton and Canterbury cannot support Defendant's claim of ineffective assistance of counsel here.

### E.

Defendant also argues that his counsel failed to present Defendant's Maryland criminal docket sheet during trial. According to the Defendant, admitting the criminal docket sheet was

---

[9] Furthermore, Fourth Circuit precedent provides that the three enumerated sanctions are appropriate only where a witness has violated a sequestration order by the district court. *See Smith*, 441 F.3d at 263. Here, because Canterbury and Hamilton exchanged notes *before* the trial began, there is no indication that the notes violated any sequestration order by the district court. (*See* J.A. 572–73; 614).

necessary because the government led the jury to believe that Defendant had been formerly convicted of the human trafficking of minors, when in reality Defendant was only convicted of the misdemeanor of receiving proceeds from prostitution. *See* Def.'s Mot. to Vacate, Dkt. 256 at 4. This argument is without merit because counsel for Defendant directly addressed Defendant's Maryland criminal history at trial. Specifically, counsel sought to move in the statute that Defendant was previously convicted of in order to establish that Defendant was convicted of a misdemeanor under state law for receiving money from a prostitute. (J.A. 1324–26). Choosing to move for admission of the statute rather than the criminal docket sheet is not outside of the "wide range of professionally competent assistance" as would be required to overcome the "'strong presumption' that counsel's decisions were within the broad spectrum of reasonableness." *Tice*, 647 F.3d at 102 (quoting *Strickland*, 466 U.S. at 689). Defendant's trial counsel therefore did not act deficiently in addressing Defendant's criminal history.

Nor can Defendant establish, as *Strickland* requires, that his counsel's failure to move in the Maryland criminal docket sheet prejudiced Defendant in any way. After defense counsel moved to admit the statute under which Defendant was convicted in Maryland to show the jury that the crime was only a misdemeanor, the district court sustained an objection from the government. (J.A. 1324–26). Instead of admitting the statute as an exhibit, the district court informed the jury of the nature of Defendant's prior conviction in a separate jury instruction. Specifically, the district court instructed the jury as follows:

> Now, you heard evidence in this case of defendant Davis having been convicted of a Maryland crime. And I instruct you that the crime that he was convicted of, Section 11-304, is – he was convicted of the crime of receiving or acquiring money or proceeds from the earnings of a person engaged in prostitution. And that was a misdemeanor under Maryland law. And a person who violated – who violates that section is guilty of a misdemeanor.

17

(J.A. 1464–65). The jury was therefore informed of the exact nature of Defendant's prior conviction, which is the same information that would have been revealed by the Maryland criminal docket sheet. Thus, Defendant cannot show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### F.

Defendant also asserts that his former lawyer provided ineffective assistance of counsel by failing to move to dismiss the charges against Defendant due to government witness FBI Special Agent Skelton allegedly lying in an affidavit. According to Defendant, Special Agent Skelton "lied in her affidavit in support of an application for a search and seizure warrant, in stating she was seeking to search four cellphones seized from the vehicle of defendant," because Defendant "never had a car in his life." Def.'s Supp'l Reply, Dkt. 265 at 6. This argument must be rejected, however, because a review of the trial record shows that counsel for Defendant did in fact seek to address the alleged false statements in Agent Skelton's search warrant affidavit, but such actions were properly barred by the district court.

By way of background, while investigating Defendant and his co-conspirators for child sex trafficking, law enforcement agencies were simultaneously investigating Defendant in connection to a robbery and a separate adult commercial sex operation involving Kyleen Derry. *See* Mem. in Supp. of Def.'s Mot. to Suppress, Dkt. 102 at 1–2; Gov't's Resp. to Def.'s Mot. to Suppress, Dkt. 109 at 1–2. During the investigation into Derry, law enforcement officials seized cell phones, including Defendant's, and obtained search warrants for the phones. In advance of Defendant's trial for child sex trafficking, Defendant sought to suppress the evidence seized from the search of the cell phones, claiming, as Defendant now asserts again in his § 2255 petition,

that Special Agent Skelton lied in her search warrant affidavit. *See* Mem. in Supp. of Def.'s Mot. to Suppress, Dkt. 102 at 1–2. In response, the government informed the district court that the government would not use any evidence seized from the cell phones in connection to Special Agent Skelton's affidavit during the trial involving Defendant's sex trafficking of minors. *See* Gov't's Resp. to Def.'s Mot. to Suppress, Dkt. 109 at 1–2. The district court then dismissed Defendant's motion to suppress as moot. *See* Order Issued Jan. 2, 2018, Dkt. 111 at 1.

Based on this history, Defendant's argument that his trial counsel failed to move to dismiss his charges based on the lies in Special Agent Skelton's affidavit fails; trial counsel's handling of the affidavit does not support an ineffective assistance of counsel claim. Defendant's lawyer *did* attempt to address the purported lies in Special Agent Skelton's affidavit in Defendant's motion to suppress, which was properly denied by the court as moot given that none of the related evidence was introduced at trial. Thus, defense counsel's handling of the alleged false statements was in no way constitutionally deficient. Furthermore, because none of the evidence from the cell phones seized in connection with Special Agent Skelton's affidavit was introduced at Defendant's trial, it is impossible to see how any failure to address the supposed lies in the search warrant affidavit in a separate proceeding could have prejudiced Defendant. *See Strickland*, 466 U.S. at 687 ("[T]he defendant must show that . . . counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.").[10] Thus, Defendant's argument that his counsel should have moved to dismiss the charges based on Special Agent Skelton's search warrant affidavit must be rejected.

---

[10] *See also infra* Section G for a discussion of the Fourth Circuit's treatment of Special Agent Skelton's affidavit.

**G.**

Next, Defendant argues that his trial counsel should have obtained an affidavit from Kyleen Derry, which Defendant argues would have helped "raise reasonable doubt at trial on defendant's behalf." Def.'s Mot. to Vacate, Dkt. 256 at 5. According to Defendant, he asked his trial counsel to have Derry "sign an affidavit stating she was never arrested" in order to demonstrate that Special Agent Skelton lied in the search warrant affidavit related to the seizure of Defendant's cell phone. Def.'s Supp'l Reply, Dkt. 265 at 4–5. This argument fails because during trial, counsel for Defendant did try to address Special Agent Skelton's alleged lies as a means of impeaching Special Agent Skelton, but such actions were barred by the court as improper and irrelevant. During cross examination, counsel for Defendant sought to impeach Special Agent Skelton's credibility by asking questions about the commercial sex investigation involving Kyleen Derry and the alleged lies in the affidavit tied to the search and seizure of Defendant's cellphone. (J.A. 1276–80). After the government objected to the line of questioning, the district court found that the questions were irrelevant and improper because they related to the motion to suppress that the court had already denied as moot. (J.A. 1278–80). Indeed, the Fourth Circuit, in affirming Defendant's conviction, addressed this ruling by the district court and explained that "[e]ven if the district court erred in limiting this line of cross-examination, the error was harmless" because "the Government did not seek to introduce evidence related to this search warrant, the court had not adjudicated the veracity of the statements in the affidavit, and Counsel's assertions involved substantial speculation." *Williams*, 783 F. App'x at 273–74.

Nor can Defendant show that he was prejudiced, because any affidavit from Kyleen Derry addressing the purported lies in Special Agent Skelton's search warrant affidavit would have been inadmissible at trial. Under the Federal Rules of Evidence, defense counsel was

permitted to inquire on cross examination about specific instances of Special Agent Skelton's past conduct "in order to attack . . . the witness's character for truthfulness." Rule 608(b), Fed. R. Evid. But in doing so, defense counsel was not permitted to introduce any "extrinsic evidence" to prove the "specific instances of . . . conduct." *Id.* Thus, extrinsic evidence composed of an affidavit from Kyleen Derry would not be admissible as impeachment evidence. Furthermore, such an affidavit would almost certainly be excluded from evidence as hearsay. *See* Rule 802, Fed. R. Evid. Defendant's trial counsel therefore made no error in failing to obtain an affidavit from Derry to prove that Special Agent Skelton lied, as any such evidence would be inadmissible and therefore could not have resulted in a different outcome at trial. *See Jones v. Clarke*, 783 F.3d 987, 992 (4th Cir. 2015) ("In short, *Strickland* asks whether it is reasonably likely the result would have been different, and the likelihood of a different result must be substantial, not just conceivable."). Finally, as the Fourth Circuit explained, any "damaging potential" of the cross examination of Special Agent Skelton was "likely small," because "the Government did not seek to introduce evidence related to this search warrant, the court had not adjudicated the veracity of the statements in the affidavit, and Counsel's assertions involved substantial speculation." *Williams*, 783 F. App'x at 273–74. Indeed, as the Fourth Circuit noted, "the Government's case in no way depended upon Agent Skelton's testimony—aspects of which were corroborated by other witnesses and evidence." *Id.* at 274. Thus, Defendant cannot show that his counsel's treatment of Special Agent Skelton prejudiced Defendant at trial.

## H.

Defendant next asserts that his counsel failed to present certain evidence related to J.C., a government witness and minor victim. Specifically, Defendant points to the following two pieces of evidence that Defendant argues his counsel should have presented in order to impeach J.C.:

21

(1) a prior statement in which J.C. said that Rebecca Hamilton, not Defendant, was J.C.'s pimp; and (2) evidence showing that J.C. made a false report of sexual assault in Maryland. *See* Def.'s Mot. to Vacate, Dkt. 256 at 5–6. Both of these claims are directly refuted by the record. First, contrary to what Defendant asserts, counsel for Defendant did cross-examine J.C. about her prior statements to law enforcement that Hamilton was J.C.'s pimp. (*See* J.A. 1057–59). Specifically, trial counsel asked J.C. about her three interviews with law enforcement and also asked J.C. if she "remember[ed] saying that you told law enforcement [Hamilton] was your pimp, just to get it over with." (J.A. 1043, 1045–46, 1057). Thus, Defendant's counsel specifically took the action that Defendant now claims his lawyer failed to do.

Second, despite what Defendant now asserts, defense counsel did question J.C. on her alleged false report of sexual assault in Maryland. (*See* J.A. 1059–64). Specifically, defense counsel asked J.C. whether she had "ever made a false report" to the police, and J.C. responded "no." (J.A. 1064). Thus, trial counsel did attempt to impeach J.C. with a question about her previous false report to police. Defendant also argues that his trial counsel "failed to sufficiently pursue evidence" showing that J.C. made a false report of a sexual assault in Maryland, which "would have impeached her credibility before the jury." Def.'s Mot. to Vacate, Dkt. 256 at 5. But under the Federal Rules of Evidence, any extrinsic evidence of J.C.'s false report to police would have been inadmissible. As previously discussed, the Federal Rules of Evidence permit counsel on cross examination to inquire about instances of past conduct for to "attack or support the witness's character for truthfulness," but in doing so, counsel are prohibited from introducing any "extrinsic evidence" of the witness's past conduct. Rule 608(b), Fed. R. Evid. Thus, any failure of trial counsel to obtain documentary evidence of J.C.'s false police report was not deficient, as the evidence would not have been admissible at trial. Furthermore, because the jury

would not have been permitted to see the extrinsic impeachment evidence under Rule 608(b),
Fed. R. Evid., any failure to obtain such evidence did not impact the outcome of the trial and
therefore did not prejudice Defendant.

## I.

Finally, Defendant argues that his trial counsel failed to "obtain and present evidence . . .
showing government witness [J.C.M.] wrote a letter to Ashley admitting that [J.C.M.] was going
to fabricate an incident of defendant putting his hands on her." Def.'s Mot. to Vacate, Dkt. 256 at
5.[11] But the trial record reflects that defense counsel did in fact attempt to ask J.C.M. about
J.C.M.'s letter to Ashley. (*See* J.A. 934–36). After defense counsel asked J.C.M. whether she
wrote in a letter to Ashley that J.C.M. "fabricated a story about Mr. Davis putting his hands on
[her]," J.C.M. responded "no." (J.C. 934). When defense counsel inquired further about the
conversation between J.C.M. and Ashley, the district court sustained the government's hearsay
objection. Thus, Defendant's ineffective assistance of counsel claim based on his counsel's
failure to impeach J.C.M. with evidence of the letter is unsupported, as trial counsel took the
very steps that Defendant now asserts his lawyer failed to do, and was prevented from asking any
further questions about the letter by the district court.

In any event, even assuming trial counsel failed to obtain evidence of the letter as
Defendant asserts, Defendant cannot show that this failure prejudiced him at trial. As the Fourth
Circuit has explained, "[a] finding of prejudice is appropriate only if the facts 'undermine
confidence in the outcome' of the proceedings." *Tucker v. Ozmint*, 350 F.3d 433, 442 (4th Cir.
2003) (quoting *Strickland*, 466 U.S. at 694). And the prejudice determination requires courts to

---

[11] Defendant's habeas petition references a letter written by minor victim J.C. stating that the victim intended to lie
about Defendant putting his "hands on her," but it appears that this is a typo and Defendant is in fact referring to a
letter written by J.C.M. to A.L. *See* J.A. 934–36; Gov't's Resp. to Def.'s Mot. to Vacate, Dkt. 258 at 10 n.1.

"consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695. Given the overwhelming evidence presented at trial showing Defendant's involvement in the human trafficking of minors—including testimony from five law enforcement officers and over 200 exhibits—it is impossible to see how a minor point in the cross examination of a minor witness could "undermine confidence in the outcome" of the trial. *Id.* at 694. It therefore follows that Defendant cannot show that his trial counsel's treatment of J.C.M.'s letter to Ashley would have led to a different result at trial, and his arguments regarding the letter must be rejected.

*   *   *

In sum, Defendant has failed to show that any of the purported failures by his trial counsel amounted to ineffective assistance of counsel under the demanding standard required by *Strickland*. It is also appropriate to note that at trial, the government presented what the Fourth Circuit characterized as a "mountain of evidence" supporting Defendant's guilt. *Williams*, 783 F. App'x at 274. During trial, the jury heard from numerous witnesses about Defendant's involvement in sex trafficking, including the testimony of three minor victims, two convicted co-conspirators, two detectives from Henrico County Police, two detectives from Fairfax County Police, and one FBI Special Agent. The government also moved into evidence over 200 exhibits, including website prostitution advertisements traced back to the defendants, social media posts where the defendants discussed prostitution, social media posts establishing defendants' presence in the same cities at the same time as when the minor victims were advertised for commercial sex, photographs of Defendant with one of the minor victims, text messages between the defendants discussing prostitution, and musical lyrics by the defendants involving commercial sex. Given the overwhelming evidence supporting Defendant's guilt that was admitted at trial, Defendant cannot show that "absent [trial counsel's] errors, the factfinder would have had a

reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. For this reason, Defendant's habeas petition fails on the merits.

## III.

In conclusion, Defendant's motion to vacate his sentence must be dismissed as untimely because Defendant did not file the petition until 22 months after the expiration of the statutory deadline and almost three years after his conviction became final. Furthermore, Defendant is not entitled to equitable tolling of the § 2255 deadline because he has failed to establish that extraordinary circumstances outside of his control prevented him from filing his petition on time, and he has also failed to show that he diligently pursued his right to file a habeas petition during the three years after his conviction became final. Finally, even if Defendant's motion had been timely filed, the motion would nonetheless fail on the merits because the record conclusively shows that Defendant has no Sixth Amendment claim for ineffective assistance of counsel. Thus, Defendant's motion to vacate his sentence must be denied.

An appropriate Order will issue.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
March 16, 2023

T. S. Ellis, III
United States District Judge

25